All right, Ms. Brown. Good morning, and may it please the Court. My name is Rachel Brown, and I am here on behalf of plaintiffs, the NAACP, Prince George's County, and leaders of the NAACP County Branch, representatives of whom are here today. The 2020 Census is headed for a severe undercount of communities of color. This undercount will deprive plaintiffs of millions of dollars in federal funding and their right to equal representation. An undercount of African Americans was once mandated under the Three-Fifths Clause, but today the Bureau has a constitutional and legal obligation to ensure communities of color are counted equally. Instead, however, the Bureau has adopted several procedures, so conspicuously deficient and will lead to an undercount of communities of color. These include the slashing of field offices, including opening only half the number of field offices as in 2010. The District Court dismissed plaintiffs' well-pleaded complaint, alleging that these procedures are arbitrary and capricious and in derogation of their constitutional obligation. This was an error. Plaintiffs have standing, and their claims are ripe for review and not barred by the political question doctrine. In decades of census litigation, courts have never held that claims regarding the census cannot be reviewed prior to the beginning of the census. Moreover, plaintiffs properly target final agency actions in the form of select and discrete decisions by the Bureau laid out in the final operational plan about the procedures for conducting the enumeration. These procedures are not entirely committed to agency discretion, as the Supreme Court held just last term. This Court must ask swiftly to preserve the fundamental principle that everyone should be counted equally, regardless of their race. We ask this Court to hold that plaintiffs' claims are justiciable, that plaintiffs be allowed to seek preliminary relief based on the discovery they obtained earlier in this case, and that the government should be required to expeditiously produce an administrative record that would permit meaningful judicial review. If the district court's decision is not reversed, it will soon become too late to remedy the Census Bureau's deficient procedures, and the government will fail to meet its basic obligation to take reasonable steps to enumerate all of the population. I'll now turn to plaintiffs' APA claims, and specifically the six discrete actions that plaintiffs challenge in this case. Plaintiffs focus on... Can you help me, as you get there, which is sort of a place to start, can you help me understand in your view, is there any scenario where there's inaction by an agency? You describe the situations here as an affirmative decision to not hire, right? An affirmative decision to not open. So described, every failure to act could be described as an affirmative decision to not act. And so in your view of the world, so long as it's described as a decision instead of a failure to act, then in your view, that's an affirmative act? The decision can be the affirmative act itself? Your Honor, the decisions here are affirmative acts where the Bureau had information in its own survey suggesting that there would be an undercounting, yet chose to deviate from past practices. And we believe those are affirmative decisions rather than a decision not to act because they chose, for instance, how many enumerators they would hire. But is there, I guess what I'm just trying to understand from your perspective, is there ever inaction, right? So give me an example of something that would be inaction or a failure to act under your sort of interpretation of this concept. Your Honor, for instance, if the Bureau never implemented any of the steps laid out in the Final Operational Plan, that would be inaction? Well, but that would just be a decision not to implement the plan. So that's an affirmative decision not to implement Plank 4 of the plan or whatever it might be, right? And so why would that be any different than the scenario you've described? Your Honor, where the Bureau or any agency has an obligation to conduct, as the Constitution requires, an actual enumeration, then the decisions it makes, it's making decisions about how to conduct the procedures of the census, and those are affirmative decisions. But there may be some instances where agencies fail to act, but we're not bringing 706-1 challenges here. But that's the difference there. I'm just trying to understand this, and maybe I'm not asking a very good question. So I get the decisions on how to conduct the census, so the use of the Internet. So if you would challenge the Census Bureau's use of the Internet with the questionnaires that they're sending. So if you challenge that, that seems like a choice, right, an affirmative act. We're going to use the Internet. But that seems distinct from a failure to use actual enumerators, or failure to use enough actual enumerators in your world, right? The action-inaction distinction there seems, had you challenged the use of the Internet, I understand that's an affirmative action. But the decision not to take action, I don't see how that is an affirmative action on behalf of an agency. Your Honor, we believe that choices such as these can be reviewed in the context of affirmative choices because agencies, when they make such decisions, are required to provide an explanation in that the Bureau has an obligation to open a certain number of offices. Had it opened zero offices, that would not be serving the goals of conducting an actual enumeration. So here it's an affirmative choice about how many offices to open rather than inaction in the form of simply opening no offices at all. But don't you have to show that in order to get relief that they failed to take action that was legally required? Don't you have to show, under our City of New York case that came out in January of this year, don't you have to show that the Bureau was legally required to take the action? Yes, Your Honor. At least with regard to your APA claim? Yes, for the APA claim. Okay. How have you shown that? How have you pleaded that, that they were legally required? Refer me, if you would, to specific paragraphs in your complaint. Your Honor, in the complaint, we, for instance, in discussing the Bureau's constitutional obligation. No, I'm not talking about the enumeration clause. I'm talking about the APA claim and our precedent at the City of New York. Yes, Your Honor. In City of New York, it was required that agencies conduct actions that are legally required. And we believe that both the Census Act in establishing the obligation for agencies, for the Bureau to conduct an actual enumeration, as well as subsequent appropriations to the Census Bureau, including the most recent 2019 Appropriations Act and the Company and Conference Report, establish a legal obligation for the Bureau to conduct an actual enumeration. And that the six actions challenged by plaintiffs are steps that are necessary to ensure that it is meeting that obligation. Moreover... Yeah, but see what, and I don't mean to interrupt you, but I just want to tell you what my concern is. I'm really worried that you aren't meeting the mandate of City of New York in your pleading. And you've also got a problem with discreteness. Because just take a look at Joint Appendix 47, page 29 of your complaint, talking in the 156, 157, into the 160s, you're talking about there's no rationale as to the sufficiency of the use of the data with regard to the NRFU response efforts. Now, when a complaint talks about sufficiency, it's not talking about what's legally required, it seems to me. So how do you take care of that problem by pointing to someplace in your complaint where you're alleging not just the broad principle that you have to count, because everybody agrees with that, but that you've identified actions that are legally required within the meaning of City of New York? Your Honor, these actions are legally required in the context of City of New York because there is statutory language indicating that the Bureau must increase its outreach efforts and ensure that it's engaging in, for instance, as the 29 Appropriations Act Conference Report suggested, targeted communications and to open questionnaire assistance centers. And we believe that while the complaint does... Is that... You said two different words there. You said statutory mandate, and then you said a conference report. Is there an actual statute, or are you just relying on the legislative history to create this mandate? Your Honor, we are both relying on the statutes in the Census Act and the 2019 Appropriations Act to the Census Bureau. And then the conference report accompanying the Appropriations Act clarifies that request what the Bureau is supposed to do with its appropriated funds in ensuring that it conducts greater outreach to communities of color such as plaintiffs. And so we believe that consistent with the way the Census Act has been interpreted by the Supreme Court in ensuring that the Bureau adopt procedures that bear a reasonable relationship to the actual enumeration, that establishes a standard that the Bureau must adopt procedures that bear a reasonable relationship to conducting an actual enumeration, which they have not done here by adopting six procedures that so conspicuously violate the goal of achieving an actual enumeration, and that the Bureau's public information already indicates that some of those decisions are not supported by evidence. But moreover, we are simply at the pleading stage of this case. Plaintiffs have alleged in their well-pleaded complaint that these six actions will lead to an undercount and are not supported by the evidence before the Bureau, but we simply seek for this Court to hold that these are final agency actions and to reverse and remand them to the District Court so that an administrative record can be developed and it can be assessed. Ms. Brown, excuse me for interrupting again, and I think that the Supreme Court clearly was concerned about an undercount too when it addressed the citizenship case, and that's a very serious issue on so many levels. I mean, I am completely with you on that. But again, my concern is how you're phrasing your complaint and whether your complaint is too broad. With regard to the enumeration clause, since your light's on here, could you tell us substantively how that is different from your APA claim? Certainly, Your Honor. The Constitution requires that an actual enumeration be conducted, and that has, in Wisconsin, the Supreme Court established a standard that procedures bear a reasonable relationship. So that is looking at the relationship of the procedures for the census to the constitutional goals of the census, whereas in the APA context, we are challenging that these actions are arbitrary and capricious. And so that looks to the explanation provided by the Bureau in the context of the evidence that the Bureau had in front of it in making these choices. Okay. Is there any role that – and it looks like you've left pretext pretty much out of your complaint. I think you have an allegation to pretext at page 25 of your second amended complaint, but I don't see any allegation of pretext anywhere else. How does that play into the analysis here, if at all? Your Honor, plaintiffs are not focused on whether these allegations are pretextual, particularly at the pleading stage, which we are at here, where an administrative record has not even been produced to look at the explanations, but rather, based on information that's already available, including reports from the Office of Inspector General, there is reason to believe, as plaintiffs have pled in their well-pleaded complaint, that these actions are not supported by the evidence that was before the Bureau, and so the claims are focused on whether these actions were arbitrary and capricious. Your Honors, I see that my time is coming to a close. We ask that you hold that plaintiffs have standing and that their claims are justiciable, as numerous courts have done, including the Supreme Court, just last term in the context of assessing the injuries resulting from an undercount, and hold that plaintiffs challenge final agency actions as these six actions are discreet and appropriate for review by this Court and to remand to the District Court so that an administrative record can be expeditiously developed. Thank you. Thank you, Ms. Brown. Counsel, Ms. Treya? Thank you. Good morning, and may it please the Court, Tylynn Treya for the Government. I want to be clear up front that this is not a case about the agency slashing resources, as plaintiffs would seek to paint this lawsuit. I'm sorry, could you keep your voice up a little bit? Yes. This is not an action regarding the agency's supposed slashing of resources. This is about the ordering of the Census Bureau's allocation of resources, nearly $15 billion across a decade, across two presidential administrations. And there's simply no basis for plaintiffs' complaint here that they would prefer the Census to be carried out in a different, supposedly better way, as opposed to the manner in which the Census Bureau has determined to carry out the Census this year, as reflected in its operational plan. Now, in 2011, Congress indicated to the Census Bureau that it sought for the agency to learn from the lessons of the 2010 Census, and to try to come up with more cost-effective, efficient ways, bringing the taking of the Census into the 21st century. And that's what the operational plan, Version 4 of the operational plan here, reflects. It reflects the Census Bureau's carrying out of their expertise and taking advantage of technology in a number of ways in order to ensure that within the cost constraints imposed by Congress, that we can take the best, most accurate Census in 2020 and beyond. And just briefly, I want to return to a point that you brought up, Judge Keenan. There is absolutely no allegation of pretext here. Well, there is that one place in the complaint that I alluded to. I think it was page 25. Actually, the gravamen of what plaintiffs complain of here is that some of these deficiencies are actually attributable to Congress. And so, for example, at JA 29, paragraph 39, plaintiffs allege that Congress approved approximately 10 percent below what the Obama administration had requested. But, of course, as I think there was no dispute before the district court, plaintiffs recognized that the district court had no authority to order Congress to appropriate more funds. And what — I'm — I'm sorry. Go ahead and follow your thought. Go ahead. Follow your thought. Well, I'm interested in how far your argument goes, though, Ms. Thayer. If the Census Bureau had decided to abolish the NRFU program entirely, just said, we don't think that that's necessary, this is within our discretion, how would you respond to that today if that were the issue? That's an entirely different — No, no. Well, I'm asking a hypothetical. That's the — you know, the nature of a hypothetical. I — So tell me, what would the government's response be if you just said — I understand, Your Honor. — we don't need an NRFU program?  how the Bureau would — Well, just to say that because of technology and within our discretion, we are relying on technology, we're doing much more remotely, and we are not having an NRFU program where people go out to the houses to look at the undeliverable addresses, to look at whether these units exist. We're getting rid of the program. How would — I just want to know how far your case goes in terms of defending the discretion of the agency? Right. And I believe, in your Honor's hypothetical there, there's one choice to — logistical choice to carry out non-response follow-up operations that, in your Honor's hypothetical, I believe, was wrapped up in a number of different ways, a number of decisions along the way to use technology and other means to carry out the census. And so if we're looking at a situation like that where we have millions of logistical decisions over the course of 10 years, and again here across two presidential administrations, in that case, it is very difficult, as this Court held in the City of New York, for a court to come in and to determine in its own expertise whether or not those decisions are a proper ordering of the agency's priorities and allocation of resources. Okay. Well, let's get a little more simple then. I'm sorry. I thought you were done with your sentence there. A little simpler then. What if the Census Bureau said, we're not going to hire enumerators? No enumerators. Would that be a discretionary decision that we would uphold? I mean, if the Census Bureau refused to carry out the census — No. They've said, we're going to count. We're going to look at administrative records. We're going to go to the National Student Loan Corporation and take their records. We're going to go to MasterCard and Visa and everybody else, and we're going to count that way. We're going to match addresses with people. We don't think there's a need for enumerators. What would your response be if you were coming into court to defend that? I know that's a very difficult question, not knowing what the administrative record is, not knowing what the specific claims are, whether or not there's equal protection claim or something similar, and certainly there's no such claim here. I think it's very difficult to speculate in terms of that type of hypothetical. But what we know here is that, for example, in the use of — But wait. I just want to make sure I understand. In response to Judge Keenan's question, you're not suggesting that if the Bureau decided, we're hiring no enumerators, right? That means we're not hiring anybody to do a count. Now, maybe it's different if you're hiring nobody to go do NRFUs. But if they don't hire any enumerators, that means they don't have anybody doing a count. That would mean they just failed to do a count altogether. And you would agree that that would be a reviewable decision. There's certainly a statutory and constitutional duty to carry out a census. Absolutely, Your Honor. And we could review that. The court may review a situation where the Census Bureau, for example, is flat-out refusing to conduct the census. I don't think there's any dispute about that here. Right. And I'm not talking about that. And I probably should have been more specific in my question. I apologize if I wasn't. What I was talking about is a situation where they're saying, we're going to run NRFU only from our administrative offices. No enumerator is ever going to hit the street. Wasteful. We just don't get enough people counted by sending people, human beings, physically out on the street. We're going to do it entirely in the office. And you're saying that's defensible. No, what I'm saying, Your Honor, is that we're not asking the court to make law here. What we're saying is that this is a sort of quintessential example, for example, under the City of New York case, where you have an agency carrying out a large program rife with a number of logistical challenges across the decade. And just as the court said in the City of New York, every government program can be thought of in some way as an aggregation of individual government decisions. But this court in the City of New York said that that's not sufficient to implicate final agency action. And the same thing is true here. There's simply a lack of a discrete agency action in the manner of an agency rule, order, or sanction that plaintiffs fail to challenge here. And so I think, on the one hand, the court may prefer to think of this in terms of the agency's allocation of resources. And, of course, there was a short colloquy about Congress's urging the agency to invest more resources in, for example, questionnaire assistance centers in the legislative history, which is not binding. But I would point this to the court. I want to go back to Dick Keenan's question, just because I'm trying to understand what your response is. It sounds like what you're saying, or at least getting close to saying, is that if they decided to use no-shoe leather, so in other words nobody's going to the street, that as long as they were doing other things to constitute an NRFU, right, sort of following up, but they're doing it in different ways, but maybe not physically with shoe leather, but they're doing it with emails or satellite imaging or visa bills, all those other sort of ways of following up, that because that looks a lot like where we are now, that type of a judgment would not be reviewable. For our purposes, under the APA, that's not a discrete agency action subject to review. Sorry, I'm not trying to evade your question. I'm just saying that I think in, for example, the year 3000, it might not be possible for us today to speculate as to how, with the advances of technologies, the agency under Congress's direction might undertake to carry out the census. And so if there is a scenario, for example, as I said, where the Census Bureau is refusing to conduct the census, then we have not argued that that would be reviewable. And the Supreme Court told us as much in the New York case. Right, but those are the distinctions. And one response to that, if the Census Bureau decided to take that tack, one response would be for Congress to take back its constitutionally mandated role of determining how the census is conducted. Congress is given by the Constitution. Congress has now passed it over to the executive branch. Nobody's claimed that that's an improper delegation here. But one remedy for that would be for Congress to take it back and say, no, you can't do electronic follow-up. You have to do shoe leather follow-up to shorthand that. That's right. And I'd like to return, Your Honors, to one point I was trying to make earlier. I wanted to direct this Court to House Report 116-101 and Senate Report 116-127. And these are committee reports to the House and Senate markups of the FY 2020 bill. And so as we were discussing the questionnaire assistance centers, for example, I know plaintiffs in their reply brief discussed that they believe there is a mandate in the legislative history for the agency to open up brick-and-mortar questionnaire assistance centers. But what these reports reflect is that there has been a dialogue between Congress and the executive. And Congress is recognizing these reports that the Census Bureau has, at the urging of Congress, come up with a new plan for mobile assistance centers in hard-to-count communities. And this goes to the type of programmatic challenge that plaintiffs are bringing also because the agency in its expertise must go back and assess, back in 2010, how did these brick-and-mortar questionnaire assistance centers, what was actually the output in terms of how much money they cost. And so, Your Honors, if you refer to these reports and to the report that the Census Bureau has transmitted to Congress outlining, in broad strokes, its plan for the mobile questionnaire assistance program, you'll see that the Census Bureau, in its expertise, is able to go back and look at that output and compare it to the way we might use technology today. And wouldn't it be better if we send an individual with a tablet, for example, into what we label a hard-to-count community, where we think the individuals are more likely to gather so that they can answer the census on a mobile device right there and then as opposed to handing out flyers, taking boxes of flyers to an event that would encourage somebody to go back home and fill out their paper and pencil questionnaire. And so all of that decision— All that sounds good, Counsel, but it's not realistic in terms of the record here. First of all, we're talking about the power of the courts to intervene in an alleged constitutional violation. Judge Richardson's question suggests, and I guess you nodded affirmatively, that the answer is Congress can go back and make it better. That's not the answer to the power of this branch of government to address a constitutional violation. Do you agree that the most important part of our republic is that we count the people so that they are represented properly? Do you agree with that? I agree that there is a constitutional obligation and we— And the obligation is that Congress shall, correct? Yes. And so we're not talking about whether or not the mining rights and all these technical things that agencies get involved in. It's about counting human beings. And since 1940, you recognize you've been undercounting people and they tend to be people of color. Is that correct? Do you agree with that? There has historically been a differential undercount. Well, you don't have to repeat what I said. Just yes or no would be good. Is it correct since 1940 you have been undercounting people and there have been people of color and minorities and ethnic minorities that are largely on the brunt of your undercount, correct? Yes. The census-taking process is not a perfect one as the Supreme Court— I know it's not perfect. The court says it should be as accurate as possible. It didn't say as probable or reasonable. It said possible, correct? That is correct. And the Bureau, in this instance, is doing everything it can to carry out— You're doing everything you can. Well, how did you decide that you're going to cut down how many times you're going to follow with people who are hard-count people? Well, respectfully, the court is in no better position to make— Well, we'll decide how better position is, but first answer, how did you come to the conclusion already that you need to cut down on how many times you'll call back? How was that determined? Well, I don't want to get out ahead of things on the merits— You're not ahead of anything about my question, unless you say my question is out ahead. Respectfully, I am not evading your question. I just wanted to point out quickly, one, there is no administrative record here, and two, this is precisely the kind of policy disagreement that this court in the City of New York pointed to and said that it is impossible under— that the Administrative Procedure Act imposes vital restrictions on the separation of powers that prevents courts from entangling themselves in abstract policy disagreements like here, like whether or not seven points of contact are better than eight points of contact, whether or not sending four postcards is better than sending five postcards. Well, let's just try common sense. If you spent the amount of money you did at the last census and you had the enumerators that you had at the last census and they came up with an undercount, how is it logical that you're going to reduce enumerators and reduce funding and get a better result? Just the common sense of that. If you really want to count the people, if you really want to count everybody, how does that make sense? Your Honor, to be clear— No, not to be clear. Counsel, counsel, please don't talk over me. I'm asking you a common sense question. I haven't asked it yet. How does that make common sense if you failed with the number of enumerators you had 10 years ago? You failed with the appropriation 10 years ago. How does that make common sense that you're going to cut back on money and enumerators? I mean, just common sense. Let's get out of the books now and talk about the plain language of trying to count everybody under the constitutional mandate. How does that make common sense? If that were the premise, Your Honor, but that is not what's happening here because according to the most updated lifecycle cost estimate, the Census Bureau is on track to spend more money than it did in the last census. So that's why I said when I began my argument, this is not a case. Yes, Your Honor— You have the final plan now, right? The operational plan— Is final, correct? It's hard to get a yes or no answer out of you. Is it final now? I'm not evading Your Honor's question. I'm simply trying to make clear whether or not Your Honor is asking in terms of final agency action or the extent to which there is room on the edges of— I'm talking about the final operational plan. Is it final now? It is not final in terms of final agency action, and it's not final in terms of the agency has discretion and authority to hire more enumerators. Nothing in the operational plan is binding on the agency itself. The agency retains flexibility to spend— So basically, under your theory, that the court will never have jurisdiction in these cases because we can always change and be better and do better and build a field and they will come, right? Is that what you're saying? Basically, it's so dynamic that the court can't get into these things. No, well, several answers, Your Honor. One, it is dynamic in that the Bureau retains the flexibility to respond to a number of challenges in the field as they arise. But two, we are not advancing a novel theory here. We are advancing a run-of-the-mill basic principles of administrative law as recognized in this Court's decision in the City of New York that in order to be reviewable, there has to be implicated a final agency action. Yeah, but we're not just here under the APA. We're also here under the enumeration clause, and I haven't heard you say anything about the district court's ruling that the enumeration clause claims were unripe or were not ripe. Are you agreeing that the district court erred there? Well, we've briefed that issue under the rubric. Well, no, I'm just asking you, Ms. Thayer. Are you agreeing that the district court erred in holding that these claims were not ripe? We think that perhaps in a more proper jurisdictional lens through which to view those same concerns. Was the district court correct? This is my question, if you could answer it. Was the district court correct in holding that the enumeration clause claims were not ripe? And just to explain where I'm coming from with my answer here, the district court's ripeness holding relies on concerns that what plaintiffs are alleging here may never come to pass. Right, but the district court held that the claims were not ripe. Was that a correct holding? And begin your answer, if you would, with a yes or no. No, to the extent that it is a separate holding from standing concerns, which we think are implicated here no matter when plaintiffs might bring suit. And so, as we've explained in our briefing, there are — Okay, I'm having a little trouble understanding you. Was the district court correct in saying these were not ripe? And so I think a lot of these concepts, Your Honor, are very inextricably intertwined. And so — and I'll quote from the district court's decision. So, the district court was concerned that plaintiffs' allegations were resting upon contingent future events that may not occur as anticipated. Right, but the court refused to allow them to replete, didn't it? Didn't the court refuse to allow them to reinstate, saying that there was a ripeness issue and that the claims were not ripe? Now, how is that correct? It was — the district court reconsidered plaintiffs' request one week after it had dismissed plaintiffs' enumeration clause claim as unripe and said that in the intervening week that the claims had not all of a sudden become ripe. Right, so you know what I'm worried about here, and maybe you could help me, is that the district court was so focused on the APA claims, and there really is a very good argument that there's a City of New York problem here, and you don't have final agency action, and you don't have discrete acts. And then the district court maybe just kind of tossed away the enumeration clause. In other words, it focused so carefully that the enumeration clause perhaps, and with no disrespect, this is an excellent judge, but perhaps the enumeration clause case analysis kind of came straggling behind because it seems that in relying on ripeness, that wasn't a basis, a fair basis to dismiss that enumeration clause claim. I see my time is up for my response. So I just have a few quick points in response, Your Honor. One, these general principles of reviewability don't all of a sudden fall to the wayside just because a challenger also implicates a constitutional claim, and the Supreme Court has never countenanced an enumeration clause challenge to a nondiscrete action. In fact, in several Supreme Court cases... There's no discussion of enumeration clause claims. They're talking about APA. Isn't that correct? And that's correct, in the city of New York. And my point is that in looking at the Supreme Court's cases addressing enumeration clause claims, none of those cases involved nondiscrete, nonfinal agency actions. And, in fact, two of those cases involved situations where Congress specifically passed a law conferring standing on individuals aggrieved by decisions to use statistical sampling. And so there's simply no basis in the Supreme Court's precedent on enumeration clause for this Court to hold that plaintiffs might bring the type of challenge that they're bringing here to an agency's effort over a decade in allocating $15 billion that that type of claim would be justiciable either under the Constitution or the APA. Chief, may I ask... I'm going back to Judge Keenan's question a little bit. I read your brief, in essence, to ask us on the enumeration clause claim to affirm on the ground not expressly articulated below that they lack standing for sort of the reasons that undergirded the rightness decision by the district court. Is that a fair reading of what your argument is? Yes, Your Honor. Okay, and then, so accept that. Just go with yes where you can. If that's true, just briefly answer why we should do that as opposed to vacate the district court's decision on rightness and say, eh, whatever it is, not a rightness problem. There may be that the district court needs to take up questions of standing. There may be they need to take up other issues without prejudging those. But we find got the rightness analysis wrong. Therefore, go back on that claim and evaluate all of the various other things that might be at play, right, from standing to failure to state a claim to any other defenses that might be raised. Why should we reach out and address standing instead of sending it back to the district court to address that issue in the first instance? Because I think all of these concerns are very inextricably intertwined, and I think it would be somewhat anomalous for this court to hold, for example, that there's no final agency action because the agency decisions that plaintiffs seek to impugn here, they don't determine rights and obligations, that they are too indirectly removed from the types of harms that plaintiffs allege, but then at the same time to implicitly find standing. And so that's why it is... Well, but we wouldn't be implicitly finding standing. We would just say we review judgments below. I mean, that's sort of our job. The decision below was not right. We find, at least in our hypothetical, and I don't think you really disagree, that that decision was wrong. We could affirm on some alternative ground, and I understand your point, is that that alternative ground's not unrelated to lots of other issues going on, but it's not the other issues that are going on. It is a distinct question about standing under the enumeration clause, and we have a tendency to not want to be the first people to decide questions. And so what I'm trying to figure out is why that's not... Why the government isn't saying, eh, yeah, maybe there's a problem with the rightness inquiry. Like, give us another crack at figuring out what the right answer is on that claim before the district court judge. It is a distinct question that goes to jurisdiction, and it implicates another, at least, redressability issue, as we've explained under Southern Utah. There is very much a redressability problem here that the Supreme Court has said, if courts were to have the authority to issue... Totally true, but my question is not the merits. My question, and maybe you just have answered it all, you can answer it, but my question is not the merit. You want to argue the merits, and I understand that. Mine is, why us, instead of the district judge, to make that redressability decision based on the enumeration clause claim? And so I wasn't trying to make a merits argument, but I was just simply trying to make a point that this Court often dismisses cases for jurisdictional reasons for lack of standing without remanding to the district court for an additional analysis. And in a case like this one, where the redressability element is lacking because what plaintiffs seek is a court-ordered new plan and court monitoring on a day-to-day basis of how the agency is carrying out the program, the Supreme Court has made clear in Southern Utah that that type of claim is not redressable. And so if the court were to prefer to view it through the lens of Southern Utah or agency's discretion to allocate funds or lack of final agency action, for all those reasons, plaintiffs' claims fail. Thank you. Thank you. Ms. Amonson. Good morning. May it please the Court. Jessica Ring-Amonson for Appellants. I'd like to begin with the constitutional claim and address Judge Richardson's question about affirming on the alternative basis of standing, but I would certainly like to get to the APA claim as well and address Judge Keenan's concerns about the City of New York case. So starting with the constitutional claim, Judge Richardson, I think it would be improper for the court to affirm on the alternative basis of standing for one reason, because the district court actually found already that the plaintiffs have standing in its January opinion. And so the district court has actually already expressed an opinion on that. Moreover, the Supreme Court's recent decision on the citizenship question. Excuse me one second. I just don't understand. So you think the district court has done the sort of full analysis of standing and we can review that, and so it's not an alternative ground. In fact, we could just review the district court's decision on standing? I think the district court did find that plaintiffs had standing and it found it in accordance with what the Supreme Court held in the citizenship question case, where the Supreme Court held that the same exact allegations the plaintiffs allege here. But the Supreme Court dismissed the enumeration clause claim in the citizenship case, so why are you trying to bootstrap its decision regarding standing in the APA claim onto the enumeration clause here? Yes, Your Honor, but the Supreme Court rejected that claim ultimately on the merits. Here, the district court has not allowed the plaintiffs to reach the merits of their claim. It dismissed the claim on ripeness grounds, and I think we can all agree that that was incorrect. I didn't hear the government defend that decision here, and so that decision needs to be reversed, and the court should allow the district court, to the extent that it has questions about the district court's standing analysis, it should remand to the district court for further analysis of standing. However, the district court's standing analysis should be in accordance with the citizenship question case in which the Supreme Court held that there is Article III standing for exactly the same type of allegations that plaintiffs allege. I don't want to prejudge that, but there are distinctions on redressability between the citizenship question and this one. I don't know whether those distinctions matter or not, and I agree it should be consistent, but I want to make sure I understand, because at one point you seem to suggest the standing decision has already been made, so we should review that, we can review that, but then you say we should remand it for further standing analysis, which is the sort of position you're really taking? So my position is that the court cannot affirm on the alternative basis of standing. It can either find that the district court's, it can reach the district court's standing analysis and find that the district court was correct. Well, now, the district court's most recent decision, its final order, doesn't address standing with regard to the enumeration claim. Isn't that correct? It does not address standing, and don't we have precedent that says that standing has to be found with regard to each claim? You can't just find standing on one and then piggyback and go in on the others. Yes, Your Honor, so I think... It seems to me that you're not really, if you'll pardon my saying so, not focusing on the final order of the district court, which did not address standing on the enumeration clause claim. That's fair, Your Honor, and so we think that the court cannot affirm on the alternative basis that plaintiffs lack standing. So at the very least, the court should remand the enumeration clause claim because the district court erred in finding that the claim was not right. If I could turn to Your Honor's questions about the City of New York, and I want to be very clear here that City of New York is inapposite because City of New York is a 706-1 claim to compel agency action unlawfully withheld. We have not pled an APA 706-1 claim. We have pled APA 706-2 claims that the agency's decisions are arbitrary and capricious and not in accordance with law. And the... So you're saying you don't have to show that these actions are legally required? No, Your Honor. What's the standard then? Just general... General, you have to show a rational connection between the facts found and the decisions made, and there has to be law to apply. And there is law to apply. And I think that the Supreme Court's decision in the citizenship case also answers that question in that it says that the Census Act and Section 141 of the Census Act imposes upon the Census Bureau a duty to conduct an actual enumeration of the people that fairly accounts for the important representational rights at stake. The court can look to Census Act Section 141. The court can look also to Public Law 105-119, which is codified in the notes of Section 141 and directs the Census Bureau to put a particular emphasis on accurately enumerating all individuals who have historically been under... Right, but how do we do that? You see what I'm saying? What happens? Let's say we agree with you. How do we write that opinion in terms of directing them to do something? Do a better job? Try counting more people? It seems to me that... Respectfully, Your Honor, you don't have to write that opinion. All that you have to do is remand to the district court, which still hasn't even ordered the production of the administrative record. It held that the APA claims were not reviewable. And that, respectfully, cannot be squared with the Supreme Court's recent decision in the citizenship question case where Justice Alito was the only one who found the APA claims not reviewable. All other eight justices found that the APA claims were reviewable and that the Census Act provides... But that's based on the discrete action of including a question, right? Writing the question on, where when we look at Norton v. Southern Utah, they talk about it doesn't matter 706-1 or 706-2, that if it's inaction, right, and they distinguish between action and inaction, but the failure to act, it doesn't matter if it's a decision to fail to act or an actual failure to act, but a failure to act is not reviewable under Southern Utah in the context that you've got. And what I can't understand, and I started with your colleague on this, is how a decision to fail to act is different from an affirmative failure to act. It seems to me that the city of New York encompasses both of those equally. So, Your Honor, what we have alleged in our well-pleaded allegations are that there are six discrete decisions that the Census Bureau has made, and I'll take just one of them as an example. But the decision is a decision not to act. No, Your Honor. The decision is to hire a certain number of enumerators. The hypothetical that Your Honor was positing earlier of hiring no enumerators so that there would be no nonresponse follow-up, that is just a difference in degree, not in kind. It shouldn't change the reviewability analysis. We have alleged that they have set out a certain target of enumerators, and that those enumerators will not be sufficient to accurately count the hard-to-count populations. And as Chief Judge Gregory was pointing out, in fact, there have always historically been undercounts. In fact, communities of color were undercounted to such a degree in the last census that two additional congressional districts would have been filled with people of color. So, in fact, that... Can I ask a slightly... And I apologize for going over, Chief. No, sure. That's great. So, just sort of conceptually, you know, you use as a baseline the last census, and you say, well, they should have done at least as many follow-ups as they did before. They should hire at least as many enumerators as they have before, which seems like an odd position to take because everybody agrees that that census did not meet the ideal that the Constitution sets for it, of actual enumeration, right? It undercounted. Everybody seems to agree it undercounted. And yet you want to say, listen, but that's what we want to do. We want to get back. We want to do the same thing, which presumably we know will reach the same result, right? And we've got no reason to think it'll be different. And so that seems to be the gold standard in your sort of view, where I take the government's position, and maybe this is getting too far to the merits, but I just am curious of your perspective on it. The government seems to be saying, yeah, last time didn't work, right? Sending them out eight times didn't help. So instead, we're going to send them out two times, but we're going to do these five other steps, these five technology-driven steps, because like eight pairs of shoes or eight shoe leather visits didn't get it done. So maybe two shoe leather visits plus three postcards and an internet touch plus a database search of some sort, like that might actually solve the problem, which everybody agrees is a problem. I don't know whether that's right or not. I'm not sure how we're supposed to evaluate whether the shoe leather, like eight shoe leather visits or maybe it ought to be 16 shoe leather visits or 24 shoe leather visits, but why the eight shoe leather visits is different in a way that the court can evaluate whether eight shoe leather versus two shoe leather plus three postcards and internet and a database search, that those are different in some way. Thank you, Your Honor. I want to be clear that we're not claiming that the Census Bureau must do exactly what it did and that it cannot innovate or try new things. That is not the claim here. The claim here is that what they have chosen to do is arbitrary and capricious and not in accordance with law and that it should be evaluated against the administrative record. So what we're saying here is that, for example, when the Census Bureau chooses to hire one-third less enumerators when its own studies show that the number of people who are likely to respond to the initial questionnaire from the Census is 20 percentage points lower than it was in 2010, that that is arbitrary and capricious and not in accordance with law and that that should be evaluated against the administrative record. It may well be, Your Honor, that eventually a court finds that the Census Bureau did accurately or did account for all aspects of the problem and that the decision is not, in fact, arbitrary and capricious. But at the very least, Your Honor, we ask that this be remanded so that the administrative record can be produced and those claims can actually be evaluated on the merits. And respectfully, we ask that it be done expeditiously given that we are facing a very tight timeline. Thank you, Counsel. Thank you. All right. Thank you very much for your argument. Thank you, Mr. Whishney and Yale students. Thank you. And Ms. Trejo, Representative of the United States, thank you so much. We'll come to our Greek counsel and proceed to our next case.
judges: Roger L. Gregory, Barbara Milano Keenan, Julius N. Richardson